SELLS E. WOODHULL, Respondent, v. THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK and THE CITY OF BROOKLYN, Appellants.

MUNICIPAL CORPORATIONS — NON-LIABILITY OF CITIES FOR ACTS OF BROOKLYN BRIDGE POLICEMEN. The municipal corporations of the cities of New York and Brooklyn are not liable for acts of a bridge policeman, appointed by the trustees of the Brooklyn bridge pursuant to the statute (Laws of 1875, chap. 300, § 8), done in the public character of policeman, and not within the scope of any employment as an agent or servant of the municipalities.

*Woodhull* v. *Mayor, etc., of N. Y.*, 76 Hun, 390, reversed.

(Argued October 8, 1896; decided October 20, 1896.)

APPEALS from judgment of the General Term of the Supreme Court in the first judicial department, entered March 29, 1894, which affirmed a judgment in favor of the plaintiff entered upon a verdict, and also affirmed an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Francis M. Scott* for appellants. The Brooklyn bridge is a public structure used for public purposes. (Laws of 1867, chap. 399 ; Laws of 1869, chap. 26 ; Laws of 1874, chap. 601 ; Laws of 1875, chap. 300; *People ex rel.* v. *Kelly*, 76 N. Y. 475.) The bridge policemen are peace officers of the state and the defendants are not responsible for their tortious acts. (Laws of 1890, chap. 565, § 58 ; *Dempsey* v. *N. Y. C. & H. R. R. R. Co.*, 146 N. Y. 290 ; *People* v. *Rathbone*, 145 N. Y. 434; *Tilford* v. *Mayor, etc.*, 37 N. Y. Supp. 185 ; *McKay* v. *City of Buffalo*, 9 Hun, 401 ; 74 N. Y. 619 ; 2 Dillon on Mun. Corp. § 975 ; *Ready* v. *Tuscaloosa*, 6 Ala. 327 ; *Dargan* v. *Mobile*, 31 Ala. 469 ; *Cook* v. *Macon*, 54 Ga. 460 ; *Cranston* v. *Augusta*, 61 Ga. 572; *Harris* v. *Atlanta*, 62 Ga. 290 ; *McElroy* v. *Albany*, 65 Ga. 387 ; *Attaway* v. *Cartersville*, 68 Ga. 740 ; *Odell* v. *Schroeder*, 58 Ill. 353 ;

*Culver* v. *Streator*, 130 Ill. 238; *Lafayette* v. *Timberlake*, 88 Ind. 330.) But even if it be held in the case at bar that in the management and operation of the bridge the two cities act as if they were a private corporation, still they are not liable for the acts of the policeman, Bishop. (*Palmeri* v. *M. R. Co.*, 133 N. Y. 261; *Wells* v. *W. M. Co.*, 19 Wash. L. R. 52; *T. B. I. Co.* v. *Steinmeier*, 72 Md. 313; *Hersey* v. *O'Neill*, 36 Fed. Rep. 168; *Oppenheimer* v. *M. R. Co.*, 45 N. Y. S. R. 134; *Jardine* v. *Cornell*, 50 N. J. L. 485; *Brill* v. *Eddy*, 22 S. W. Rep. 488; *Morse* v. *Augusta*, 20 S. E. Rep. 653; *Dickson* v. *Waldron*, 135 Ind. 507.) A municipal corporation is not liable for a false imprisonment. (7 Am. & Eng. Ency. of Law, 685; *Odell* v. *Schroeder*, 58 Ill. 353; *Trammell* v. *Town of Russellville*, 34 Ark. 105; *Trescott* v. *City of Waterloo*, 26 Fed. Rep. 593; *Ogg* v. *Lansing*, 35 Iowa, 495; *Caldwell* v. *City of Boone*, 51 Iowa, 687; *Perley* v. *Georgetown*, 7 Gray, 464; *Tilford* v. *Mayor, etc.*, 37 N. Y. Supp. 185.)

*Paul E. De Fere* for respondent. By the provisions of the acts under which the New York and Brooklyn bridge was constructed, the bridge belongs conjointly to the two cities of New York and Brooklyn; the trustees of the bridge are the agents of the cities; and those employed by the trustees are likewise the agents and servants of the cities, for whose wrongful, careless and negligent acts in performing the duties of their employment the cities are liable. (*Walsh* v. *Mayor, etc.*, 107 N. Y. 220; Laws of 1875, chap. 300, § 7; *People ex rel.* v. *Kelly*, 76 N. Y. 487; *Bailey* v. *Mayor, etc.*, 3 Hill, 531; Dillon on Mun. Corp. [3d ed.] § 981; *Murphy* v. *Lowell*, 124 Mass. 564; *Hand* v. *Brookline*, 126 Mass. 324; *Dwinelle* v. *N. Y. C. & H. R. R. R. Co.*, 120 N. Y. 122; *Stewart* v. *B. & C. T. R. R. Co.*, 90 N. Y. 588; *Neito* v. *Clark*, 1 Cliff. 145; *Comm.* v. *Power*, 7 Metc. 596; *Goddard* v. *G. T. R. Co.*, 57 Me. 202; *Cracker* v. *C. & N. W. R. Co.*, 36 Wis. 657; *C. & E. R. R. Co.* v. *Flexman*, 103 Ill. 546.) There can be no doubt that such an agent of

a carrier of passengers can violate the duties owed to them by unlawfully imprisoning them and preventing them from the accomplishment of their journey; and that for such a wrong the carriers are liable as for a breach of their contract of carriage. (*White v. T. T. S. R. R. Co.*, 20 Wkly. Dig. 510; *Lynch v. M. E. R. Co.*, 90 N. Y. 77; *Hamel v. B. & N. Y. F. Co.*, 125 N. Y. 707; *Rusher v. City of Dallas*, 18 S. W. Rep. 333; *Gibson v. City of Huntington*, 38 W. Va. 177; *Brill v. Eddy*, 22 S. W. Rep. 488; *Carrington v. St. Louis*, 89 Mo. 208; *E. & T. H. R. R. Co. v. McKee*, 99 Ind. 519; *Goff v. G. N. R. Co.*, 30 L. J. C. L. 148; 2 Addison on Torts, § 817; *T. & P. R. Co. v. Williams*, 62 Fed. Rep. 440.)

Haight, J. This action was brought to recover damages for an alleged false imprisonment. On the 19th day of May, 1890, the plaintiff entered a car upon the Brooklyn bridge for the purpose of being transported from the city of Brooklyn to the city of New York. The gong had sounded for the cars to start and one Bishop, a police officer of the bridge trustees, standing upon the outer platform, closed the sliding door of the car just as the plaintiff entered, catching his foot between the door and the jamb. The door was then opened a little so that the plaintiff released his foot; he turned about, shook his hand at the policeman, asked him why he crushed his foot in the door, and then passed across the car and took a seat. Bishop thereupon entered the car, stepped up in front of the plaintiff, put his hand upon his shoulder and told him that he was under arrest. Some conversation appears to have taken place between the officer, the plaintiff and others sitting in the car near by, in which it appears that the officer said that the plaintiff had struck him across the face. The officer continued with the plaintiff across the bridge to New York, there detained him in his seat until the car returned to Brooklyn, and then took him to the police station, where the charge of assault and battery was preferred against him. He was then conveyed to the office of a magistrate, where he was charged

with assault, upon which he was subsequently tried and discharged.

The evidence bearing upon the assault on the officer was conflicting, some of the witnesses testifying that the plaintiff struck the officer in the face, others that he merely shook his hand or fingers and did not hit the officer. This question was submitted to the jury, and under the verdict found we must assume that an assault was not made, and consequently that the arrest was made without reasonable cause, and was, therefore, unjustifiable.

Whilst the Brooklyn bridge is a public structure owned by the two cities and is used as a public highway, it is operated by the cities as common carriers for the transportation of passengers for gain, and we shall consequently assume that they are liable for damages caused by the negligent or unlawful acts of their servants done within the scope of their employment. Was Bishop such a servant? The bridge is managed and operated by a board of trustees. They are " authorized to appoint an adequate police force and to regulate and direct the same for the protection of the said bridge and of the travel over the same, and of all persons, vehicles, railroad cars and animals using or passing over the same, and the policemen so appointed shall have and possess all the powers of policemen of the cities of New York and Brooklyn." (Laws of 1875, chap. 300, § 8.) The trustees, acting under the provisions of this act, appointed Bishop a policeman, and he has served in that capacity for upwards of ten years. By his appointment he became vested with all the powers of policemen of the cities of New York and Brooklyn. It became his duty to look after the welfare of the passengers and people traveling upon the bridge, to preserve them from harm, to prevent disorder and to arrest offenders. His duties were of a public character, designed for the protection of the people and the execution of the laws of the state.

The liability of a municipal corporation for the acts of servants or agents depends upon the character of the service. If the corporation appoints or elects them and controls them

in the discharge of their duties, if it can continue or remove them or hold them responsible for the manner in which they discharge their duties, and if their duties relate to the exercise of corporate powers and are for the peculiar benefit of the corporation in its local or special interest, they may be regarded as its agents or servants and the maxim *respondeat superior* applies. But if they are elected or appointed by the corporation in obedience to a statute, to perform a public service, not local or corporate, but because this mode of selection has been deemed expedient by the legislature in the distribution of the powers of government, they are not to be regarded as the servants of the corporation, but as public or state officers, with such powers and duties as the statute confers upon them, and the doctrine of *respondeat superior* does not apply. Police officers appointed by a city are not its agents or servants. (2 Dill. Mun. Corp. [3d ed.] §§ 974, 975; *McKay* v. *City of Buffalo*, 9 Hun, 401; affirmed, 74 N. Y. 619; *Maximilian* v. *Mayor, etc., of the City of New York,* 62 N. Y. 160.)

Bishop, as we have seen, was appointed by the trustees of the bridge, but his appointment was made pursuant to the provisions of a statute. Whilst he was specially charged with the duty of protecting the bridge, he was also required to protect the travel over the same, having the same powers with reference thereto of other policemen appointed by the cities. It was as much his duty to look after the welfare of travelers from remote parts of the state or from foreign countries as it was that of the residents of the cities which the bridge connected. He was required not only to execute the rules and regulations of the bridge, but the laws of the state. If a policeman of the city of New York had been traveling over the bridge upon one of its cars and had made the arrest of an individual for an alleged assault upon such officer, the municipality would not be liable, and we fail to discover any substantial distinction between that case and the one at bar. The learned General Term has undertaken to distinguish the two cases. In doing so they treated the police-

man's act in closing the door and making the arrest as one transaction done in his capacity of employee. In this view we are unable to concur. Assuming that the act of closing the door was that of a servant and that it did not pertain to a public duty, it by no means follows that the subsequent act was not of a different character. Bishop was not in the employ of the cities as an ordinary servant or trainman. He was a policeman appointed as such and acting in that capacity, and when he stepped inside of the car, placed his hand upon the shoulder of the plaintiff and announced to him that he was under arrest, he was acting in his character of policeman and not within the scope of any employment as an agent or servant of the municipalities.

It is said that the cities might escape all liability for injuries to passengers by appointing all of their servants policemen. We apprehend, however, that there is no trouble in this respect, for it is very easy to distinguish between the duties of a servant and those of a policeman.

The judgment should be reversed and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed.