(101 App. Div. 183)

PEOPLE ex rel. BLATCHFORD v. McADOO, Police Com'r, et al.

(Supreme Court, Appellate Division, Second Department. January 6, 1905.)

1. NEW YORK CITY CHARTER—CIVIL SERVICE—REGULAR CLERKS.
   Whether one is a "regular clerk," within Greater New York Charter, § 1543 (Laws 1901, p. 636, c. 466), relative to the removal of such clerks, must be determined by the nature of his duties; a regular clerk being one employed in the duty of keeping records or accounts, or in doing writing relating to the ordinary conduct or business details of the department.

2. MANDAMUS—PLEADINGS—FORCE OF DENIALS.
   Denials in the return of the averments of a petition for mandamus must control, when the right to a peremptory writ of mandamus is considered.

3. NEW YORK CHARTER—CIVIL SERVICE—REGULAR CLERKS.
   The property clerk, who, by Greater New York Charter, §§ 331-336 (Laws 1901, pp. 141-143, c. 466), is required to take charge of property stolen or embezzled which comes into the hands of the police, and property taken from prisoners, or lost or abandoned, and to advertise such property, and to sell it in case no claimant appears, and who is required to give security for the faithful performance of his duties, is not a "regular clerk," within the meaning of section 1543 of the charter, regulating the removal of regular clerks, although he is required to keep a book of registry, description, and disposition of the property in his hands.
   Hooker, J., dissenting.

Appeal from Special Term, Kings County.

Mandamus proceedings by the people, on the relation of Charles D. Blatchford, against William McAdoo, as police commissioner of the city of New York, and another. From an order granting a peremptory writ of mandamus, defendants appeal. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, JENKS, and HOOKER, JJ.

Theodore Connoly (William B. Crowell, on the brief), for appellants.

Charles S. Aronstam, for respondent.

JENKS, J. Whether the relator was a regular clerk, within the purview of the protection of section 1543 of the Greater New York Charter (Laws 1901, p. 636, c. 466), must be determined by the

nature of his duties. People ex rel. Warschauer v. Dalton, 34 App. Div. 302, 54 N. Y. Supp. 216, affirmed and opinion adopted in 159 N. Y. 235, 53 N. E. 1113. I think that the term "regular clerk," as used in this section, means one employed in the duty of keeping the records or accounts or in doing the writing which relates to the ordinary conduct or business details of the department. "It was used, in its popular sense, as denoting one whose duties are clerical, and they may be very various." People ex rel. Sims v. Fire Commissioners, 73 N. Y. 437. And in the same case it is said:

"A clerk in offices is defined to be a person employed in an office, public or private, for keeping records or accounts, whose business is to write or register, in proper form, the transactions of the tribunal or body to which he belongs."

See, too, Warschauer v. Dalton, supra.

The relator would seem to recognize the justness of the definitions, in view of his averment, after stating that he was a regular clerk, that "his duties in said office were of a purely clerical nature, to wit, keeping records of property lost or abandoned, or taken into the custody of said department, and keeping books for such purpose." But these averments are denied, and the denials must control when the right to a peremptory writ is considered. People ex rel. Lewis v. Brush, 146 N. Y. 60, 40 N. E. 502; In re Haebler v. N. Y. Produce Exchange, 149 N. Y. 414, 44 N. E. 87. But the relator also averred that he was the property clerk of the city of New York, and fulfilled the duties of that position, and this is not denied. I assume that the learned Special Term, upon this admission, decided, as a matter of law, that the peremptory writ must issue; holding that the property clerk was a regular clerk, within the meaning of the section cited. Inasmuch as the duties of the property clerk are prescribed and specially described in the charter, both the learned Special Term and we are enabled to decide this question without the aid of further averment or proof as to such duties. The property clerk is required by law to take charge of all property alleged to be stolen or embezzled, which comes into the hands of the police, all property taken from prisoners, all property alleged or suffered to be feloniously obtained, or which is lost or is abandoned and is taken into the custody of either policemen or of criminal court, or which shall come into the custody of either. And he is the keeper of all such property, save that he must send animals to the public pound. Under certain circumstances, he is subject to the orders of a magistrate with regard to such property. He retains such property until the discharge or conviction of any alleged criminal who is concerned therewith. All property taken on the supposition that it was the fruit of crime, for which no claimant appears, other than the criminal; all lost property coming into the possession of the police force; all property taken from pawnbrokers as the proceeds of crime, or taken from the supposed insane, or from intoxicated persons, or from incompetents—is, as soon as possible, delivered to him for registration and public advertisement. All property stolen or embezzled and not claimed ere the lapse of six months after a conviction for the crime must be delivered up to him, and such property, together with the other property which has remained in his possession for a period of six

months unclaimed, is advertised and sold for the benefit of the
police pension fund. He must hold property in his hands which is
required or needed in any police court or criminal court, subject to
the court's order, but he must retake it. He may be required to
give security for faithful performance. Sections 331–336, Greater
New York Charter (Laws 1901, pp. 141–143, c. 466). These are
not the duties of a clerk or of a regular clerk, but of a subordinate
in the department of the police, charged with the care and keep of
valuable property while it may be required as evidence in courts of
justice, and until its owner may appear or be ascertained, or, none
appearing, until it is sold in accordance with law. He is the public
depositary or the custodian, as it were, in the department of police,
of all property which has been parted from its owner, and yet has
been rescued by the police from absolute loss through accident or
by crime. The discharge of such duties calls for qualities far dif-
ferent from those required in a clerk engaged in the keeping of
books, the making of entries, or the casting of accounts. It is true
that the statute requires him to keep a book of registry, description,
and disposition, but this is merely in the line of method and of
order. To contend that a man who, in the discharge of his public
duties, must keep a record thereof in a book, is therefore a clerk,
or that his duties, because he must keep record of them, are purely
clerical, seems absurd. If this be the exclusive criterion, the record
of his work, not the doing of it, is the primary duty. It might as
reasonably be contended that a safe deposit company, perforce of
the keeping of its books, is purely a clerical corporation. Folger,
C. J., in People ex rel. Board of Fire Commissioners, 86 N. Y. 149,
153, speaking of one alleged to be a "regular clerk," says:

"There were, doubtless, among the duties of his place, some that were
clerical in their nature. He was obliged to keep a record, in form for refer-
ence, of the business that went through his office, and to furnish quarterly re-
turns to the board. But the weight of his duties and powers was not
clerical."

In People ex rel. Sims v. Fire Commissioners, supra, it is said:

"There may be good reasons why places of this character should be at the
absolute disposal of the department responsible for the execution of the laws
which do not apply to 'regular clerks.' "

The exact reasons, or all of the reasons, we may not conjecture,
but some are not far to seek in this case. The chattels held by the
property clerk under the law have passed from the safe-keeping of
the owner. They are not deposited by the owner, and they are
held for a period more or less indefinite. The volume of their value
must necessarily vary, nor can it be forecast. Many of them are
easy of concealment, or are readily transmuted into money. Some
of them are in the form of money, or of securities or other evi-
dences of debt. The loss or misplacement of them may defeat jus-
tice, and there may be those who would willingly pay their full
value if such evidence was not forthcoming. There is the chance
always that the owner may never be revealed. It would seem that
the care and keep of such things would require a man in whom
could be placed the highest confidence. Clerical ability is not the
criterion or the test in such a case. And the power to require

security is no adequate substitute for confidence based upon personal knowledge of the subordinate.

The order should be reversed, with $10 costs and disbursements, and the writ dismissed, with costs. All concur, except HOOKER, J., who dissents.