(117 App. Div. 565)

### CLAYMAN v. CITY OF NEW YORK.

(Supreme Court, Appellate Division. First Department. February 8, 1907.)

MUNICIPAL CORPORATIONS—TORTS—ACTS OF OFFICERS—GOVERNMENTAL FUNCTIONS.

> An ordinance of the city of New York made it a misdemeanor to sweep rubbish on the roadway or sidewalk, and superintendents of the street cleaning department had been instructed by the department to enforce the ordinance, and that, in case of a violation, the foreman or detailed man should cause the arrest of the offender by reporting the matter to the nearest policeman, and by becoming a witness in the case. A street sweeper, in order to enforce an alleged violation of the ordinance, reported the matter to a policeman, and officers, in whose presence no offense had been committed, and, without any warrant, arrested defendant, the street sweeper being present and urging the officers to take defendant. *Held*, that the city was not liable as the arrest was made by the police who were acting as a governmental agency, Greater New York Charter, Laws 1901, p. 136, c. 466, § 315, having commanded the police to enforce and prevent the violation of all laws and ordinances of the city.

> [Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 1568.]

Appeal from Trial Term, New York County.

Action by Chellie Clayman against the city of New York. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Nathan Ballin (Abraham L. Gutman, of counsel), for appellant.

Theodore Connoly, William B. Ellison, Corp. Counsel (Rotal E. T. Riggs, of counsel), for respondent.

CLARKE, J. The complaint alleges two causes of action: First, that on March 26, 1903, plaintiff was lawfully occupying her rooms at 332 Cherry street; that one Geottardo Ferrara, a servant of the de-

fendant, was engaged in the regular prosecution of his duties as street sweeper of the street cleaning department on Cherry street; that while so engaged, and in the regular discharge of his duties, the said Ferrara, in his endeavor to prevent an alleged violation of the municipal ordinances, caused, instigated, and directed several persons, also employés of the city of New York, to wit, policemen of the said city, to lay violent hands upon the plaintiff, to enter her rooms, to drag her down the stairs of her dwelling house, and to drag her along the sidewalk for several yards, and otherwise to brutally assault her; the said street sweeper joining in said assault. The second cause of action alleges that on the 22d day of March, 1903, the said Ferrara, the street sweeper as aforesaid, in the discharge of his duties as said street sweeper, for the alleged purpose of enforcing the ordinances of the city in respect to the care of streets, wrongfully and unlawfully caused the plaintiff to be arrested without the issuance of a warrant and placed the plaintiff under custody of police officers of the city of New York; that she was conducted to Bellevue Hospital and there detained seven days; that on April 3, 1903, she was discharged by the magistrate in the Essex Market police court; that the arrest was wholly without probable cause. The evidence tended to show that plaintiff was the janitress of 332 Cherry street in the city of New York, on March 26, 1903. On that day, while she was in her room about 11 or 12 o'clock in the morning, a policeman and a street sweeper came to the door of her room. The door was open. Although she spoke no English, she thought the officer came on account of the ashes and garbage. He said to her "Come on." She went with him downstairs, and the officer showed her where she had swept some rubbish from the sidewalk into the street, and she said:

"No, I was not down stairs, and I did not sweep because I was sick,"

She further testified:

"Then I want to go back up stairs again. He caught hold of me that way. Come up to the station house. I say I am sick, and I cannot go to the station house. Then I said, 'Let me go up stairs,' and he said, 'No, come to the station house.' I sat down on the step because he would not let me go up in the house. He grabbed hold of my hand and dragged me, and the street sweeper said, 'Take her. Take her.'"

At this time the plaintiff was in an advanced state of pregnancy, and expected to be delivered of a child either that day or the next. A neighbor informed the policeman of the woman's serious condition, and she went into the rooms of another neighbor and laid down on the lounge. The policeman called an ambulance and the surgeon examined the plaintiff. The officer, who by this time had been joined by other officers, started to put plaintiff on a stretcher to carry her to the ambulance. The plaintiff, associating the stretcher with the carrying out of dead bodies, became alarmed, the children began to cry, and she refused to be put on the stretcher, so the officers carried and dragged her down and put her in the ambulance. Within an hour after she was taken to the hospital her baby was born. She remained in Bellevue from the 26th of March until the 3d of April, 1903, and on that day she was taken by a policeman to the Essex Market police

court, and arraigned on a charge of violating a city ordinance. The complaining witness was Ferrara. The magistrate discharged her. The ordinance she was accused of violating was as follows:

"No person or persons shall throw, cast or lay or direct, suffer or permit any servant, agent or employee to throw, cast or lay any ashes, offal, vegetables, garbage, dross, cinders, shells, straw, shavings, paper, dirt, filth or rubbish of any kind whatsoever in any street in the city of New York, either upon the roadway or sidewalk thereof, except that in the morning before 8 o'clock or before the first sweeping of the roadway by the department of street cleaning, dust from the sidewalk may be swept into the gutter if there piled, but not otherwise and at no other time. The willful violation of any of the foregoing provisions of this section shall be and is hereby declared to be a misdemeanor and shall be punished by a fine of not less than $1 nor more than $10 or by an imprisonment for a term of not less than one or more than five days." Section 1. Ordinance of March 11, 1902, approved March 18, 1902.

The officer who made the arrest acted without a warrant. Previous to the arrest, a letter of instruction of the street cleaning department was issued to the district superintendents to enforce the ordinance above set forth:

"Where people are found to be violating the law in sweeping their stores out from the pavement into the streets after 8 o'clock in the morning, it will be necessary for the foreman or detailed man who witnesses such violations to cause the arrest of the offender by reporting the matter to the nearest policeman, and become a witness in the case. As this is the only way in which this abuse can be thoroughly corrected, these means will have to be adopted."

At the close of plaintiff's case, the complaint was dismissed, and from the judgment entered thereon, the plaintiff appeals.

It is impossible to read this record without feeling that the plaintiff was subjected to a gross outrage. That a woman within an hour of her confinement should have been forcibly arrested without a warrant by a number of policemen for a minor misdemeanor not committed in the presence of any one of them, and in no way affecting the public peace, is a demonstration of the kind of official stupidity which tends to bring the enforcement of the law under public condemnation. Nevertheless, the question is presented whether the city is liable in damages for the acts of the individuals complained of. Appellant claims that the city is responsible, because the acts complained of were done by, and upon the instigation of, a street sweeper, an employé of the department of street cleaning, which department was not one of the governmental agencies of the city, but exercised functions incident to the city in its individual or private capacity. It is true that it is the law that a municipal corporation is liable in damages for the torts by its agents and servants in the same way, on the same ground and to the same extent as an individual principal or master for the acts of those departments in which it does not exercise acts of government or general sovereignty. It has been expressly held that:

"It is clear upon principle and authority that the city of New York in the ordinary and usual care of its streets, both as to repairs and cleanliness, is acting in the discharge of a special power granted to it by the Legislature, in the exercise of which it is a legal individual as distinguished from its governmental functions when it acts as a sovereign." Missano v. The Mayor, 160 N. Y. 123, 54 N. E. 744.

In that case, the city was held liable in damages for the death of a child who was run over and killed by a horse attached to an ash cart of the street cleaning department. The argument of the appellant, therefore, is that as the acts complained of grew out of an alleged violation by the plaintiff of an ordinance of the city in regard to cleanliness of the streets, and were upon the instigation of the street sweeper in the performance of his duty as an employé of the street cleaning department, therefore the city is responsible under the doctrine of respondeat superior.

So far as the first cause of action, the assault, is concerned, it does not appear that the sweeper participated therein further than in pointing the plaintiff out to the officer and saying, "Take her. Take her." It further appears clearly that the alleged assault was but a part of the illegal arrest, and not an independent transaction. The duty of the street sweeper was clearly defined by the instructions which pointed that:

"Where people are found to be violating the law in sweeping their stores out from the pavement into the streets, it will be necessary for the * * * detailed man who witnesses such violation to cause the arrest of the offender by reporting the matter to the nearest policeman, and becoming a witness in the case."

These instructions were addressed to those employés only who witnessed an offense. Thereunder the street sweeper's duties, as an eye-witness of a violation, were confined to reporting the matter to the police and becoming a witness. Of course no power was conferred upon the policeman to arrest without a warrant for this misdemeanor not committed in his presence. So far, therefore, 'as the arrest in this case is concerned, it was neither authorized by any instructions of the street cleaning department nor by the law. The arrest, however, was made not by an employé of the street cleaning department, but by the police. The police department and its subordinates are not, and never have been, considered to be in the same category as the street cleaning department. The police department is one of the governmental agencies of the state, and, for the unauthorized or tortious acts of its members, the city has never been held responsible under the doctrine of respondeat superior. The appellant urges that the officer who made the arrest did not act in his public or governmental capacity, but acted as an adjunct of the street cleaning department in enforcing the ordinance of the city in relation to the condition of the streets, and that as the municipality's duties to keep the streets clean is a private one, and not one of the duties of sovereignty, the city should be liable. The answer is that the policeman was commanded by the Legislature to enforce and prevent the violations of all laws and ordinances in force in this city. Section 315 of the Greater New York Charter of 1901, Laws 1901, p. 136, c. 466. The officer was either acting entirely outside the scope of his duty, in which event the city would not be responsible therefor, or was performing a public duty in making the arrest, and was carrying out the mandate of the Legislature imposed especially upon him and upon no other class of state servants. Ordinances duly passed have the same force and effect as laws passed by the Legislature. "The authority to enact by-laws is delegated to the city

by the sovereign power, and the exercise of the authority gives to such enactments the same force and effect as if they had been passed directly by the Legislature. They are public laws of a local and limited operation, designed to secure good order, and to provide for the welfare and comfort of the inhabitants." New Orleans Waterworks Co. v. New Orleans, 164 U. S. 471, 17 Sup. Ct. 161, 41 L. Ed. 518.

In Woodhull v. Mayor, 150 N. Y. 450, 44 N. E. 1038, action was brought against the city to recover damages for an alleged false imprisonment. The arrest was made by a police officer of the Brooklyn Bridge trustees. The court distinctly held that police officers appointed by a city are not its agents or servants, and, although the officers whose acts were complained of in that case were appointed by the bridge trustees, held that the same rule applied to them. Judge Haight said:

"He was a policeman appointed as such, and acting in that capacity, and when he stepped inside of the car, placed his hand upon the shoulder of the plaintiff, and announced to him that he was under arrest, he was acting within his character as a policeman, and not within the scope of any employment as a servant or agent of the municipality."

It seems clear, therefore, that the city is not responsible in damages to the plaintiff in this case. The illegal arrest having been by a police officer, her cause of action is against him.

The dismissal of the complaint was therefore required, and the judgment should be affirmed, with costs. All concur.