RAFAEL CASTRO, Respondent, *v.* NEW YORK RAILWAYS CORPORATION and Another, Appellants.

Second Department, December 10, 1928.

*Henry J. Smith* [*Ambrose Clogher* with him on the brief], for the appellant New York Railways Corporation.

*Max Herschaft*, for the appellant D. M. P. Operating Company.

*William S. Butler* [*James A. Gray* with him on the brief], for the respondent.

YOUNG, J. The action was brought for damages for personal injuries sustained by the plaintiff by reason of the concurring negligence of the defendants. As a result of the accident, plaintiff lost his left leg, amputated below the knee, and his left arm, amputated below the elbow. He also suffered other injuries.

Plaintiff claimed that, while he was crossing Lenox avenue in a westerly direction on the southerly crosswalk of West One Hundred and Thirty-third street in Manhattan, at about four o'clock in the afternoon of Columbus Day, 1927, he was struck by a taxicab of the defendant operating company, which was being driven north on Lenox avenue, and, as a result of being struck, he was thrown upon the south-bound track of the defendant railways corporation, and that, while lying unconscious upon said track, a trolley car of said defendant, traveling south, ran over him, and as a result he suffered the injuries complained of.

The court is in' accord that the questions of negligence and contributory negligence were properly submitted to the jury; also that the verdict is not against the weight of the evidence, that the amount thereof should not be disturbed, and that no reversible errors are presented by the record save in one respect.

The plaintiff upon the trial offered in evidence a regulation made by the police commissioner of the city of New York as follows:

" Pedestrians, where no police officer is present and no traffic light control system is in operation, shall have the right of way

on crossings, and vehicles must slow down and stop if necessary to permit pedestrians on crossings to pass."

The appellant D. M. P. Operating Company insists that the court erred in admitting this regulation and in charging the jury as to its effect. The charge is as follows:

" With regard to the police regulations that the attorney for the plaintiff introduced in evidence, it is provided in the Greater New York Charter, which is a statute of the State, that the Police Department and force are required to regulate, direct, control, restrict and direct [sic] the movements of all teams, horses, carts, wagons, automobiles, and all other vehicles on streets, bridges, squares, parks and public places for the facilitation of traffic and the convenience of the public, as well as the proper protection of human life and health, and to that end the Police Commissioner is empowered to make such rules and regulations for the conduct of vehicular traffic in the use of the public streets, squares and avenues as he may deem necessary.

" In conformity with the grant of power thereby conferred upon the Police Commissioner by the Legislature, certain traffic regulations were made by the Police Commissioner, which became effective on January 1, 1927, and the particular regulation which the plaintiff invokes is under the heading of right-of-way, and it is provided that

" ' Pedestrians, where no police officer is present and no traffic light control system is in operation, shall have the right of way on crossings, and vehicles must slow down and stop if necessary to permit pedestrians on crossings to pass.' .

" I charge you that that provision of the police regulations is applicable in case a pedestrian is on the crossing, and that in this case it would be applicable if you find that the plaintiff was on the crossing. And I believe you know from the testimony what the crossing is. It is practically the continuation of the sidewalk. Anything towards the roadway to the right or towards the roadway to the left of that is not the crossing, and a pedestrian in either of those spaces does not come within the provisions of the regulation. But of course in applying that regulation you will also be guided by the rule which requires persons using the streets where there is automobile traffic or vehicular traffic, to exercise ordinary care, just as the driver of the automobile is required to exercise ordinary care. It would not be a fair application of the ordinance to say that the driver of an automobile must perform an impossibility if upon arriving within a foot or two of the crosswalk, someone suddenly started to run across the crosswalk. The ordinance does

not mean that in such a case the driver must come to a stop, for that would almost be impossible. But if a pedestrian is walking on the crosswalk, and the automobile is a sufficient distance away to permit the driver to avoid colliding with the person, then the law says that the pedestrian has the right of way. I hope I make that clear."

Proper exception was taken to this charge, and the court stated that it was not made as against the defendant New York Railways Corporation. It is asserted that this regulation was ineffectual and without force because the police commissioner had no power to promulgate any such rule or regulation; that his power is limited to making rules and regulations in conformity with existing law. It is not contended that this regulation ran counter to any statute of the State, but it is claimed that it is opposed to the common-law rule that the rights of pedestrians and vehicles upon the streets and highways are equal and that, for this reason, it is void. It is true that such is the rule in regard to pedestrians and vehicles in the use of public streets and highways. (*Baker* v. *Close*, 204 N. Y. 92.) It appears that the police commissioner promulgated this regulation pursuant to the provisions of section 315 of the Greater New York Charter. The provision is to be found in said section, as amended by chapter 455 of the Laws of 1914. It is substantially recited in the judge's charge. It will be noticed that the Legislature has given this power of regulation in the Greater New York Charter directly to the police commissioner. By the terms of the act, the police commissioner is authorized to make rules regulating traffic. The cases cited by the appellant D. M. P. Operating Company are not in point. In these cases the Legislature gave certain powers to the common council of municipal corporations and it delegated the powers so given to it to someone else, and the courts held that such powers could not be so delegated. But, here, there is no such delegation of power. The situation is the same as if the Legislature had empowered the common council of the city of New York to regulate traffic and it had passed the regulation. It is apparent that the Legislature could legally pass a statute on this subject contrary to the rule of the common law. The common law is constantly being changed by statute. By the act referred to, the Legislature has authorized the police commissioner to regulate traffic, and he would plainly have the same right as the common council to pass the regulation unless the Legislature is prohibited from granting such powers to such an official as the police commissioner. While counsel for the respondent has not touched upon this question at all in his brief, I find that the courts have treated this subject in several cases. In *Peace* v. *McAdoo*

(110 App. Div. 13) this same section of the Greater New York Charter was considered by the court. It had not then been amended to its present form, but it then gave authority to the police department to regulate the movement of vehicles in the streets, etc., and the commissioner of police, acting pursuant to this authority, made an order prohibiting traffic altogether in parts of certain streets, and it was held that such a regulation could not be sustained because power to regulate did not include power to prohibit. Mr. Justice JENKS wrote the opinion for the court and there was a dissent by two members thereof, they apparently being of the opinion that the police commissioner had authority even to prohibit traffic in the streets. In the course of his opinion, Mr. Justice JENKS stated as follows:

" This is an appeal by the police commissioner from that judgment.

" Such rule is in exercise of the police power which primarily is lodged in the State itself (*New Orleans Gas Co.* v. *Louisiana Light Co.*, 115 U. S. 650), and which is expressed by legislative enactment. A police officer, who is but a public or State officer, vested with such powers and duties as are conferred by statute (*Woodhull* v. *Mayor, etc.*, 150 N. Y. 450, 454), has of course no inherent police power. The Legislature, as the assembly of the sovereign people, may delegate such power of legislation (Dillon Mun. Corp. [4th ed.] § 141; Cooley Const. Lim. [7th ed.] 172), and frequently confers it upon the local legislative body proper of a municipality. Freund on Police Power (§ 10) writes: ' The exercise of the police power for the protection of safety, order and morals constitutes the police in the primary or narrower sense of the term. It is a power so vital to the community that it is often conceded to local authorities of limited powers. It is the police power in this narrower sense of the term which the Supreme Court of the United States concedes on principle to the States even where its exercise affects interstate and foreign commerce.' There are instances where such power has been delegated beyond the strictly local legislative body of a municipality. (*People ex rel. Cox* v. *Special Sessions*, 7 Hun, 214; *People ex rel. Lieberman* v. *Vandecarr*, 175 N. Y. 440; *Commonwealth* v. *Plaisted*, 148 Mass. 375, and authorities cited.) A reading of section 43 of the Greater New York charter, which confers generally this power upon the board of aldermen, indicates that there is some legislative power in the head of the department of police. * * *

" The question then is whether under these sections the commissioner of police could by general rule prohibit the movement of teams and vehicles generally in parts of a city street. I think

that he could not, for the reason that power to regulate is not power to prohibit."

It will be noticed that Mr. Justice JENKS stated that " There are instances where such power has been delegated beyond the strictly local legislative body of a municipality," and he cited certain cases to sustain this proposition. One of them, *People ex rel. Cox* v. *Special Sessions* (7 Hun, 214), seems especially in point. In that case it was held that the Legislature has power to confer upon any department of municipal government the authority to enact and enforce ordinances. The opinion was written by Mr. Justice DANIELS and concurred in by Justices DAVIS and BRADY. A number of authorities are therein cited. (See, also, *People ex rel. Cavanagh* v. *Waldo*, 72 Misc. 416; affd., 149 App. Div. 927; 205 N. Y. 589.) I think the law is settled on this point, and in my opinion the regulation is valid and was properly received in evidence upon the question of defendants' negligence.

The judgment should, therefore, be affirmed, with costs.

RICH and SEEGER, JJ., concur; LAZANSKY, P. J., and CARSWELL, J., concur as to appellant New York Railways Corporation; LAZANSKY, P. J., dissents as to appellant D. M. P. Operating Company upon the ground that the police regulations, even if lawfully adopted, are merely orders to the police, which may be enforced as occasion arises; in the absence of express direction by the police in the regulation of traffic, the regulations may not vary common-law rights; CARSWELL, J., dissents as to appellant D. M. P. Operating Company upon the ground that the regulation in question is an invalid exercise of legislative power in so far as it purports to change the common law with respect to right of way as between pedestrians and vehicles.

Judgment affirmed, with costs.