242

## UNITED STATES v. CITY OF NEW YORK.

### No. 220.

Circuit Court of Appeals, Second Circuit.

Feb. 10, 1936.

Paul Windels, Corp. Counsel, of New York City (Paxton Blair, Matthew J. Troy, and Leonard M. Wallstein, Jr., all of New York City, of counsel), for appellant.

Lamar Hardy, U. S. Atty., of New York City (Walter H. Schulman, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

On June 18, 1931, police officers of the city of New York, who had arrested a man named Arthur Flegenheimer, took from the person of the prisoner the sum of $18,600 in currency. Concededly the money was his. It was deposited for safekeeping with the property clerk of the police department. Five days later an assessment for 1930 income taxes in an amount much greater than $18,600 was duly made against Flegenheimer, and a lien upon all his property was established in compliance with 26 U.S.C.A. § 115 (Revenue Act 1928, § 613 (a), 45 Stat. 875). Notice of said tax lien was given and demand was made upon the property clerk and the police commissioner of the city that the money of the taxpayer be turned over to the proper collector of internal revenue; but the property clerk delivered the money to some one else. Though the record is not clear, it may be assumed he returned it to Flegenheimer; in any event,- the United States did not get it. Thereafter this action was brought against the city under section 1114 (e) of the Revenue Act of 1926, 44 Stat. 116, 117, 26 U.S.Code (1934 Ed.) § 1610 (a, b), 26 U.S. C.A. § 1610 (a, b). Upon the trial a verdict was directed for the plaintiff for $18,-600 and interest from August 19, 1931, the date of written demand. From the judgment entered thereon the defendant has appealed.

The theory of the plaintiff's case is that the city, through the property clerk of its police department, had possession of the taxpayer's money and was under statutory duty to surrender it to the United States. The statute relied upon reads as follows (44 Stat. 117):

"(e) Any person in possession of property, or rights to property, subject to distraint, upon which a levy has been made, shall, upon demand by the collector or deputy collector making such levy, surrender such property or rights to such collector or

deputy. * * * Any person who fails or refuses to so surrender any of such property or rights shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of the taxes. * * *

"(f) The term 'person' as used in this section includes an officer or employee of a corporation or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs."

The general definitions of the statute (Revenue Act 1926, 44 Stat. 9, § 2, 26 U.S. C.A. § 1696) declare that the term "person" means also a corporation, and that the term "includes" when used in a definition "shall not be deemed to exclude other things otherwise within the meaning of the term defined."

█ If the possession of the property clerk can be imputed to the city, we have little doubt that the judgment should be affirmed, despite the appellant's contention that a municipal corporation in discharging governmental functions is not responsible for the torts of its agents. It is true that this doctrine of immunity, with certain statutory exceptions, still prevails in New York. Maxmilian v. Mayor, etc., of New York, 62 N.Y. 160, 20 Am.Rep. 468; Woodhull v. Mayor of City of New York, 150 N.Y. 450, 44 N.E. 1038; Evans v. Berry, 262 N.Y. 61, 186 N.E. 203. It is likewise true that the federal courts follow local law in adjudging the responsibility of a municipal corporation for the torts of its employees. City of Detroit v. Osborne, 135 U.S. 492, 10 S.Ct. 1012, 34 L.Ed. 260; Harris v. District of Columbia, 256 U.S. 650, 654, 41 S.Ct. 610, 65 L.Ed. 1146, 14 A.L.R. 1471; City of Denver v. Porter, 126 F. 288, 294 (C.C.A. 8); Clark v. Atlantic City, 180 F. 598, 601 (C.C.). But just as this local rule may be overridden by "the law of the sea" (Workman v. New York, 179 U.S. 552, 21 S.Ct. 212, 45 L.Ed. 314), so it may by a federal statute enacted in the exercise of the power to levy and collect taxes. Compare Burnet v. Harmel, 287 U.S. 103, 110, 53 S.Ct. 74, 77 L.Ed. 199. This was clearly recognized in the majority opinion in Re Rosenberg's Will, 269 N.Y. 247, 199 N.E. 206, which held that the immunity from the reach of creditors accorded by the local law to a spendthrift trust did not defeat a federal tax lien levied upon income in the hands of the trustee. Hence the primary question of the present appeal is whether section 1114 (e), Revenue Act 1926, 26 U.S. C.A. § 1610 (a, b), has rendered the city liable for the default of the property clerk of its police department.

Though it be conceded, arguendo, that a municipal corporation is a "person" within the meaning of the section in question and that proper demand was made upon the city for delivery of the taxpayer's money, the question remains whether the city had "possession" of it. Undeniably physical custody of the money was in the property clerk. He is appointed by the police commissioner and is paid by the city; hence the plaintiff argues that he was an employee of the city and held the money in his custody as agent of his employer. On the other hand, the appellant contends that local statutes prescribe the duties of the property clerk and in the performance of them he is not subject to direction by the city officials; it argues, therefore, that in holding the property intrusted to him he is discharging governmental functions, and his possession is not imputable to the city. This is the vital issue in the case. Section 1114 (e) throws no light upon this question, and we must turn to the local law and statutes to find the answer.

Under the provisions of the Greater New York Charter, the chief executive officer of the city is the mayor. Section 94. The head of the police department of the city is the police commissioner, who is appointed and removable by the mayor. Section 270 as amended by Laws N.Y.1915, c. 164 and Loc.Laws N.Y.1931, p. 104. The police commissioner has the power to appoint and remove members of the police force and such clerks, secretaries, assistants, and employees and other subordinates as may be reasonably necessary for the proper performance of the functions of the police department. Section 283. The comptroller of the city pays all salaries and wages to officers and members of the police department and force. Section 297. Specific references to a property clerk are to be found in sections 331–336 inclusive, as amended, and in section 353.

Section 331, as amended by Laws N.Y. 1917, c. 400, relating to the employment and duties of such clerk, reads as follows: "§ 331. The police commissioner shall employ some person as clerk, who shall be designated property clerk, to take charge of all property alleged to be stolen or em-

bezzled, and which may be brought into the police office, and all property taken from the person of a prisoner, and all property or money alleged or supposed to have been feloniously obtained, or which shall be lost or abandoned, and which shall be taken into the custody of any member of the police force or criminal court in the city of New York, or which shall come into the custody of any magistrate or officer, shall be, by such member or magistrate, or by order of said court, given into the custody of and kept by the said property clerk. All such property and money shall be described and registered by said property clerk in a book kept for that purpose, which shall contain * * * a description thereof, the names of all claimants thereto, and any final disposition of such property or money. The said police commissioner may prescribe regulations in regard to the duties of the clerk so designated, and require and take security for the faithful performance of the duties imposed by this section."

The remaining sections may be briefly summarized. Under certain circumstances the property clerk is subject to the orders of a magistrate with regard to such property. Section 332. He retains such property until the discharge or acquittal of any alleged criminal who is concerned therewith. Section 333. All property taken on the supposition that it was the fruit of crime, for which no claimant appears other than the criminal; all lost property coming into the possession of the police force; all property taken from pawn brokers as the proceeds of crime, or taken from intoxicated, incompetent, or supposedly insane persons—is, as soon as possible, to be delivered to him for registration and public advertisement. Section 334. Property remaining in his custody for six months without any lawful claimant therefor must be advertised and sold at public auction and the proceeds of such sale paid into the police pension fund. Section 335, as amended by Laws N.Y.1920, c. 734. Property in his custody which may be desired as evidence in a criminal court is subject to the court's order, but must be returned to him. Section 336. Section 353 (4) states that all lost, abandoned, unclaimed, or stolen money remaining in the possession of the property clerk for one year, for which there shall be no lawful claimant, and all money arising from sales by the property clerk, shall form part of the police pension fund. Section 691 of the Code of Criminal Procedure also applies to New York City and is substantially. like section 331 of the Greater New York charter.

It is apparent that the property clerk, although appointed by the police commissioner and paid by the city, is charged with definite statutory duties with respect to property or money coming into his custody. As to certain socially noxious articles the police commissioner has a degree of control through his discretionary power to direct their destruction. He may also prescribe regulations in regard to the duties of the property clerk and may require a bond for the faithful performance of his statutory duties, and may summarily discharge him and appoint a successor. People ex rel. Blatchford v. McAdoo, 101 App. Div. 183, 91 N.Y.S. 553, affirmed 181 N.Y. 547, 74 N.E. 1123. In other words, the police commissioner can see to it that the property clerk performs his statutory duties. But neither the police commissioner nor any other city officer can control or direct the disposition of property or money held by the property clerk. Unlike a private corporation, the city cannot direct its employee to deliver the goods to some other employee or agent. The power of control and disposal, which is the essence of possession, is in the property clerk alone and is to be exercised in the discharge of his statutory duties. These are ancillary to the administration of justice; that is a sovereign function, delegated to municipalities only for convenience. Hence, it is more nearly accurate to call him an "agent of the criminal court" as in Simpson v. St. John, 93 N.Y. 363, 365, than an agent of the city. See, also, Majewski v. Farley, 203 App.Div. 77, 196 N.Y.S. 508; Duboff v. Haslan, 195 App.Div. 117, 186 N.Y.S. 481; Tzatzken v. City of Detroit, 226 Mich. 603, 198 N.W. 214. Before his possession can be imputed to the city a relationship of agent and principal must be shown to exist. Since his control and disposal of the property are governed by statute and are not subject to the commands of any city official, we think it clear that that relationship does not exist. In this respect the case differs from Workman v. New York City, 179 U.S. 552, 564, 21 S.Ct. 212, 45 L.Ed. 314, where it was found that the relation of master and servant existed between the city and those in charge of its fire boat. Moreover, that case has been distinctly limited to matters maritime. See Harris v. District of Columbia, 256 U.S. 650, 654, 41 S.Ct. 610, 65 L.Ed. 1146, 14 A.L.R. 1471.

It is urged that municipal corporations can act only through agents and therefore section 1114 (e) necessarily contemplates the application of the doctrine of respondeat superior. But that argument begs the question here at issue. The section applies to a person (corporation) "in possession" of a delinquent taxpayer's property. There may be circumstances under which the possession of a city employee can be imputed to the city, and there, the federal statute would apply; but in circumstances where the local law does not impute it, we can find nothing in the statute expressing an intention to override the local rule. Under the New York doctrine "police officers appointed by a city are not its agents or servants" (Woodhull v. Mayor of City of New York, 150 N.Y. 450, 454, 44 N.E. 1038, 1039); nor is the police property clerk. The judgment appealed from must therefore be reversed.

Judgment reversed.