THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JACOB WEISBERGER and Others, Appellants.

Court of Special Sessions of City of New York, Appellate Part, Second Department, August 16, 1939.

*Samuel A. Neuburger*, for the appellants.

*William F. X. Geoghan, District Attorney* [*Edward H. Levine* of counsel], for the respondent.

BAYES, Ch. J.  Appeal from judgment of the Magistrates' Court of the City of New York, Traffic Court, Borough of Brooklyn, entered March 13, 1939, convicting defendant and ten others of a violation of paragraph (b) of subdivision 3 of section 77 of article 5 of the Traffic Regulations of the City of New York.  The case was tried upon an agreed statement of facts which stipulated in substance that Officer Hittle, attached to Traffic J, on February 8, 1939, served a summons on defendant Samuel Levy for a violation on said last-mentioned date of the above traffic regulation in that said defendant operated an omnibus over certain specified streets in the county of Kings commencing at West Thirty-seventh street and Neptune avenue and terminating at the Abraham Lincoln High School, Ocean parkway and West avenue.  It was further stipulated that the officer observed seven children enter the bus on West Thirty-seventh street and Neptune avenue and that at other points a total of twenty additional children were picked up and taken to said school; that defendant operated the omnibus each school day pursuant to contracts made with parents of infant passengers whereby an agreed amount was paid either weekly or monthly; that defendant did not carry any other passengers except the children under contract as stated; that defendant had proper license plates from the State of New York, a certificate of compliance from the Transit Commission of the State of New York, a sightseeing or charter bus license and that the defendant had a hack driver's license; that the omnibus was properly bonded and defendant had complied with the inspection rules and regulations of the police department and the Transit Commission and had a certificate of convenience and necessity issued by the Interstate Commerce Commission.

Inasmuch as all of the defendants were charged with a violation of paragraph (b) of subdivision 3 of section 77 of article 5 of the

Traffic Regulations of the City of New York, it was stipulated that the decision in the case of defendant Samuel Levy should be binding as to all defendants.

The complaint against said defendant Levy alleges: "That on the 8th day of February, 1939, at the City and County aforesaid Samuel Levy operated a bus along Mermaid Avenue from West 57th Street to Stillwell Avenue in the Borough of Brooklyn, did carry passengers and not having been granted a franchise or permit by proper Municipal or other competent authority in violation of Article 5, Section 77, of the Police Traffic Regulations."

In passing upon the questions raised it is necessary to consider the provisions of section 435 of the New York City Charter and paragraph (b) of subdivision 3 of section 77 of article 5 of the Traffic Regulations of the Police Department of the City of New York.

Section 435 of the charter reads as follows: "The police department and force shall have the power and it shall be their duty to preserve the public peace, prevent crime, detect and arrest offenders, suppress riots, mobs and insurrections, disperse unlawful or dangerous assemblages and assemblages which obstruct the free passage of public streets, sidewalks, parks and places; protect the rights of persons and property, guard the public health, preserve order at elections and all public meetings and assemblages; *regulate, direct, control and restrict the movement of vehicular and pedestrian traffic for the facilitation of traffic and the convenience of the public as well as the proper protection of human life and health;* remove all nuisances in the public streets, parks and places; arrest all street mendicants and beggars; provide proper police attendance at fires; inspect and observe all places of public amusement, all places of business having excise or other licenses to carry on any business; enforce and prevent the violation of all laws and ordinances in force in the city; and for these purposes to arrest all persons guilty of violating any law or ordinance for the suppression or punishment of crimes or offenses. The Commissioner shall make such rules and regulations for the conduct of pedestrian and vehicular traffic in the use of the public streets, squares and avenues as he may deem necessary which shall not become effective until filed with the city clerk and published in the City Record. The violation of such rules and regulations shall be triable by a city magistrate and punishable by not more than thirty days' imprisonment, or by a fine of not more than fifty dollars, or both." (Italics ours.)

Paragraph (b) of subdivision 3 of section 77 of article 5 of the City Traffic Regulations, as amended January 21, 1939, provides as follows: "(b) No person shall **operate or move, or cause or permit**

to be operated or moved, any interstate or intrastate omnibus, not having a franchise or permit from proper municipal or other competent authority over a public highway of the City of New York, except over a route designated by the Police Commissioner; nor shall such persons stop on a public highway in the City of New York to take on or discharge passengers, except at stops designated by the Police Commissioner."

Defendants-appellants argue that they are private carriers for the reason that they limit their transportation to school children with whose parents they have entered into contracts for transportation to and from school; they further contend that the provisions of the traffic regulations above quoted are unconstitutional and void, in that if given effect defendant's operations would be converted from those of a private carrier to those of a common carrier. As to these contentions it should be noted that the use of public streets for hire, whether by private carriers or common carriers, is a privilege granted by the city and, assuming the power in the police commissioner to regulate such use, such regulations will, if reasonable, be sustained. (See *Packard* v. *Banton*, 264 U. S. 140.) It seems clear that if free and unrestricted competition in the use of the public streets for the transportation of school children were permitted, an undue and dangerous congestion might result. It is difficult to see any distinction between the omnibus in question and taxicabs as respects regulations by the police commissioner, and that irrespective of whether transportation is by a private carrier or a common carrier. (See *Yellow Taxicab Co.* v. *Gaynor*, 82 Misc. 94; affd., *sub nom. Waldorf Astoria Hotel Co.* v. *City of New York*, 212 N. Y. 97.)

Defendants-appellants also contend that the traffic regulations in question violate the 14th Amendment to the Constitution of the United States in that they deprive the defendants of property without due process of law. As to this, it is important to keep in mind that the regulations do not contemplate that the defendants shall be deprived of the privilege or right of transporting school children for hire but merely that such transportation shall be over certain specified streets with certain indicated stops. We assume that if the police commissioner should decline to grant routes an application to the civil courts might be made by mandamus or other appropriate provisions to determine the justification of such refusal. Indeed, aside from any legal considerations, it would seem that the value of any such route to defendants would be enhanced by proper and reasonable regulations by the police commissioner, since it is not to be supposed that the police commissioner would grant the right of transportation of school children over a given route to more than one applicant.

The question as it seems to us turns upon the reasonableness of the traffic regulations. Authority in the police commissioner to designate certain streets as " play streets " and to close same to vehicular traffic except that using the street for necessary business purposes has been upheld. (See *Tamburrino* v. *Sterrick Delivery Co.*, 241 App. Div. 221. See, also, *Cherubino* v. *Heenan*, 253 N. Y. 463, where it was held that the police commissioner, pursuant to section 315 of the Greater New York Charter, was authorized to adopt a rule requiring vehicles to slow down and if necessary stop to permit pedestrians to pass at crossings at which there was no police officer or traffic light control. See, also, *Castro* v. *New York Railways Corp.*, 224 App. Div. 623, and *Carolan* v. *Venechanos*, 236 id. 812.)

Upon the entire case we conclude that the police commissioner is authorized and empowered for the purpose of safety to designate routes and provide stops for omnibuses of the kind and description involved in this case. Accordingly we are of the opinion that the judgment herein should be affirmed.

Doyle and Salomon, JJ., concur.