TZATZKEN *v.* CITY OF DETROIT.

MUNICIPAL CORPORATIONS — CITY NOT LIABLE FOR ILLEGAL ACTS
OF POLICE OFFICERS.
  A city municipality is not liable for the value of intoxi-
  cating liquors unlawfully seized by its police officers and
  not returned to the owner, as directed by the court, since,
  in the performance of police duties, officers are discharg-
  ing a governmental function for which the municipality
  in its sovereign capacity, in the absence of statute, is
  immune, and it is immaterial whether the city charter
  under which the police department was created is a home-
  rule charter or one created by direct act of the legislature.

Error to Wayne; Chester (Guy M.), J., presiding.
Submitted January 22, 1924.    (Docket No. 81.)    De-
cided April 10, 1924.

Case by Joseph Tzatzken against the city of De-
troit for the conversion of certain intoxicating liquor
seized by police officers without a warrant.    Judg-
ment for defendant on a directed verdict.    Plaintiff
brings error.    Affirmed.

*Baubie & Baubie,* for appellant.

*James R. Walsh* (*Richard I. Lawson,* of counsel),
for appellee.

FELLOWS, J.    Members of the police force of the
city of Detroit entered plaintiff's private residence
without a warrant, searched the home and found in
a bedroom 53 quart bottles of brandy which he had
purchased for his personal use before the prohibition
law was in effect.    They took away the 53 bottles and
delivered to the police station 51 bottles.    What be-
came of the other 2 does not appear.    It is said the

On the question of municipal liability for torts of police
officers, see notes in 12 L. R. A. (N. S.) 537; 42 L. R. A. (N. S.)
915; L. R. A. 1915E, 460.

liquor was of excellent quality. Later plaintiff was arrested and on examination was discharged and the liquor ordered returned. Every effort possible was made by plaintiff to locate the liquor and to secure its return but he was sent from the station to the property clerk and back to the station and this operation was repeated several times but his efforts were unavailing. He filed his claim against the city but it was rejected and he brought this suit to recover against the city for the value of the liquor taken. Upon the trial it appeared that one quart bottle was turned over to the chemist and the balance was delivered to the property clerk who turned it over to the Federal authorities. The trial judge directed a verdict for the defendant on the ground that the police officers were in the discharge of a governmental function and the city was not liable for their torts.

We may not find difficulty in agreeing with plaintiff's counsel that the police department and officers are deserving of severe condemnation for their unlawful invasion of the sanctity of plaintiff's home, their disregard of plaintiff's constitutional rights, their disregard of the order of the court, their sending plaintiff from "pillar to post" without any good faith effort on their part to return the liquor unlawfully taken. But the question with which we are concerned is whether the city, a municipal corporation, is liable for the torts of its police officers.

Counsel for both parties very fairly discuss the fact that the municipality exercises dual powers, one as an arm of the State, in which all the members of the public are alike concerned, and the other the exercise of the powers of a proprietary character, and both counsel agree that it is sometimes difficult to draw the line of cleavage. In the recent cases of *Gunther* v. *Cheboygan County Road Com'rs*, 225 Mich. 619, and *Attorney General, ex rel. Lennane,* v. *City of Detroit, Id.* 631, we fully considered the question of this duality of

power.    It may be here noted that some of the cases cited by plaintiff's counsel from other jurisdictions are not in accord with our conclusion in the *Gunther Case.* We shall not again review the cases from this and other jurisdictions cited by us in these two cases but will content ourselves with considering only those authorities dealing with the liability of the municipality for the torts of its police officers.    In 4 Dillon on Municipal Corporations (5th Ed.), § 1656, with the citation of numerous cases in the foot-notes, it is said:

"Agreeably to the principles just mentioned, police officers appointed by a city are not its agents or servants in such a sense as to render it responsible for their unlawful or negligent acts in the discharge of their public duties as policemen; and, accordingly, a city is not liable for an assault and battery committed by its police officers, though done in an attempt to enforce an ordinance of the city; or for an arrest made by them which is illegal for want of a warrant, or for other cause; or for their unlawful acts of violence whereby, in the exercise of their duty of suppressing an unlawful assemblage of slaves, the plaintiff's slave was killed."

In *Buttrick* v. *City of Lowell,* 1 Allen (Mass.), 172 (79 Am. Dec. 721), Chief Justice Bigelow, speaking for the court, said:

"Police officers can in no sense be regarded as agents or servants of the city.    Their duties are of a public nature.    Their appointment is devolved on cities and towns by the legislature as a convenient mode of exercising a function of government; but this does not render them liable for their unlawful or negligent acts. The detection and arrest of offenders, the preservation of the public peace, the enforcement of the laws, and other similar powers and duties with which police officers and constables are intrusted, are derived from the law, and not from the city or town under which they hold their appointment.    For the mode in which they exercise their powers and duties the city or town cannot be held liable."

In *McIlhenney* v. *City of Wilmington*, 127 N. C. 146 (37 S. E. 187, 50 L. R. A. 470), the plaintiff had been arrested without warrant and without cause. He sought to recover from the city for his unlawful arrest and imprisonment. In disposing of the case it was said:

"Upon reason and authority, the defendant city is exempt from the liability here sought to be imposed upon it equally whether it is for a tort or negligence, and whether the recovery is sought by reason of the misconduct of the officer in making the arrest, or in the act of the mayor and aldermen in appointing or retaining an unsuitable officer, with knowledge of his unfitness. In either aspect, the conduct of the officer is in the discharge of official and governmental duty, and the taxpayers of the city are not answerable in damages for official misconduct in the discharge of governmental functions in the absence of a statute making them so."

The supreme court of Minnesota in *Lamont* v. *Stavanaugh*, 129 Minn. 321 (152 N. W. 720, L. R. A. 1915E, 460), tersely states:

"That the city acts in its governmental and not in its proprietary capacity in appointing its officers, there can be no doubt. It would seem that its nonliability for negligence or other torts on the part of such officers is too well settled in this State to admit of argument."

Under a variety of circumstances liability of the municipality for the torts of its police officers has been denied; in *Whitefield* v. *City of Paris*, 84 Tex. 431 (19 S. W. 566, 15 L. R. A. 783, 31 Am. St. Rep. 69), where a bystander was negligently shot by a policeman in an attempt to kill an unmuzzled dog; in *Dargan* v. *Mayor, etc., of Mobile*, 31 Ala. 469 (70 Am. Dec. 505), where the officer negligently killed a slave while attempting to arrest him for the breach of an ordinance; in *Calwell* v. *City of Boone*, 51 Iowa, 687 (2 N. W. 614, 33 Am. Rep. 154), for assault and battery by the officer and for false imprisonment; in *Fox* v. *The*

*Northern Liberties,* 3 Watts & S. (Pa.) 103, for the illegal seizure of a horse where it was claimed an ordinance had been violated; in *Gregg* v. *Hatcher,* 94 Ark. 54 (125 S. W. 1007, 27 L. R. A. [N. S.] 133, 21 Ann. Cas. 982), for the unlawful impounding of plaintiff's stock; in *Hathaway* v. *City of Everett,* 205 Mass. 246 (91 N. E. 296, 137 Am. St. Rep. 436), where the plaintiff was assaulted and robbed by a policeman; in *Craig* v. *City of Charleston,* 180 Ill. 154 (54 N. E. 184), for an assault and battery committed by a policeman; in' *Sehy* v. *Salt Lake City,* 41 Utah, 535 (126 Pac. 691), where plaintiff's lands had been flooded by reason of stretching a netting across the river in an attempt to recover the body of a boy drowned in the stream; in *Gillmor* v. *Salt Lake City,* 32 Utah, 180 (89 Pac. 714, 12 L. R. A. [N. S.] 537, 13 Ann. Cas. 1016), for trespass by the officers in searching for a dead body. In a foot-note to the last cited case found in 12 L. R. A. (N. S.), 537, it is said by the editorial writer:

"In municipal-corporation law no propositions are more thoroughly established than that police officers are not agents or servants of the municipality employing them, so as to render it responsible for their negligence or illegal acts in discharge of their duties as such officers."

See, also, *Elliott* v. *City of Philadelphia,* 75 Pa. 347 (15 Am. Rep. 591); *City of New Orleans* v. *Kerr,* 50 La. Ann. 413 (23 South. 384, 69 Am. St. Rep. 442); *McElroy* v. *City Council of Albany,* 65 Ga. 387 (38 Am. Rep. 791); *Gray* v. *Mayor, etc., of Griffin,* 111 Ga. 361 (36 S. E. 792, 51 L. R. A. 131); *Lynch* v. *City of North Yakima,* 37 Wash. 657 (80 Pac. 79, 12 L. R. A. [N. S.] 261); *Woodhull* v. *Mayor, etc., of New York,* 150 N. Y. 450 (44 N. E. 1038); 19 R. C. L. p. 1119; 20 Am. & Eng. Enc. Law (2d Ed.), p. 1193.

While the courts have encountered difficulties in determining in particular instances whether or not

certain officials, employees and agents of municipalities are in the discharge of governmental functions and therefore carry with them the immunity from liability by the municipality for their torts, as to policemen the courts have found little difficulty in putting them in the category of public officers (*Blynn* v. *City of Pontiac,* 185 Mich. 35), and the discharge of their duties the discharge of governmental functions. They do not act for the municipality in its proprietary character but act for the State in its sovereign capacity. Although they may be personally liable for their unlawful acts, the municipality of which they are officers is not. The municipality in so far as it performs governmental functions acts in a sovereign capacity and carries with it, in the absence of statute to the contrary, the immunity of the sovereign. The fact that the police department is provided for in the charter of the municipality does not in any way change the status of the department. Whether it is created by a home-rule charter or direct act of the legislature its functions are the same; it is an arm of the State and the municipality is not liable for the torts of its officers performed in the discharge of a duty of sovereignty.

Nor do we regard as important under the facts of the instant case the provisions of the charter of the city of Detroit that the proceeds of the sale of unclaimed property shall be used to pay the salaries of the policemen on the retired list, the balance of such salaries to be raised by general taxation. The liquor here involved was turned over to the Federal authorities and in no way contributed to this fund.

The city of Detroit is not liable for this unlawful trespass and the judgment must be affirmed.

CLARK, C. J., and McDONALD, BIRD, SHARPE, MOORE, STEERE, and WIEST, JJ., concurred.