LEE v CITY OF UTICA

Docket No. 77-915. Submitted November 8, 1977, at Detroit.—Decided June 5, 1978.

Plaintiffs, Tung Gan Lee and Myong Suk Lee, were stopped while driving by defendant Sergeant Robert L. Poynter, a sergeant in the Utica Police Department. Plaintiffs filed suit in Macomb Circuit Court against Sgt. Poynter and the City of Utica alleging tha Sgt. Poynter assaulted them without justification, uttered racial epithets and engaged in other acts of brutality and harassment against plaintiffs, and seeking damages from defendants for false arrest, false imprisonment, malicious prosecution, violation of plaintiffs' civil rights and for "the tort of insult and outrage". The trial court, Hunter D. Stair, J., granted accelerated judgment on behalf of the City of Utica on the grounds of governmental immunity. Plaintiffs appeal. *Held:*

A police officer engaged in making a traffic arrest is engaged "in the exercise or discharge of a governmental function", for which the governmental body has been granted immunity from tort liability by statute.

Affirmed.

D. C. RILEY, J., dissented. She would hold that the statute granting governmental bodies immunity from tort liability in the exercise of governmental functions does not extend to intentional torts of the police officer making an arrest.

OPINION OF THE COURT

1. TORTS—STATUTES—GOVERNMENTAL IMMUNITY—MUNICIPAL CORPO-
RATIONS—GOVERNMENTAL FUNCTION—ARREST AS GOVERNMEN-
TAL FUNCTION.

A policeman making an arrest is engaged in an activity "in the

REFERENCES FOR POINTS IN HEADNOTES

[1] 56 Am Jur 2d, Municipal Corporations, Counties, and other Political Subdivisions § 285.

63 Am Jur 2d, Public Officers and Employees §§ 288 *et seq.,* 304.

72 Am Jur 2d, States, Territories, and Dependencies § 99 *et seq.*

Nature and status of rule as to municipal immunity from liability for torts. 60 ALR2d 1198.

[2] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 298 *et seq.*

63 Am Jur 2d, Public Officers and Employees § 289 *et seq.*

exercise or discharge of a governmental function" under a statute granting a government agency immunity from tort liability for such activity (MCL 691.1407; MSA 3.996[107]).

DISSENT BY D. C. RILEY, P. J.

2. TORTS—STATUTES—MUNICIPAL CORPORATIONS—INTENTIONAL TORTS —GOVERNMENTAL IMMUNITY—GOVERNMENTAL FUNCTION—ARREST AS GOVERNMENTAL FUNCTION.

*A statute providing governmental immunity to a municipality exercising or discharging a governmental function does not extend immunity for intentional torts committed by a police officer in making an arrest (MCL 691.1407; MSA 3.996[107]).*

*LaBarge, Zatkoff & Dinning, P. C.* (by *Robert G. Lyons),* for plaintiffs.

*Joselyn, Rowe, Jamieson & Grinnan, P. C.* (by *Gary W. Carravas),* for defendant.

Before: D. C. RILEY, P. J., and D. F. WALSH and A. C. MILLER,* JJ.

D. F. WALSH, J. The relevant facts of this case are ably reported in our colleague's dissenting opinion and are adopted here. We find no error, however, in the trial court's entry of accelerated judgment, GCR 1963, 116.1, dismissing plaintiffs' suit against the City of Utica on the grounds of governmental immunity.

The act of a policeman in making an arrest is an activity "in the exercise or discharge of a governmental function". MCL 691.1407; MSA 3.996(107). The suggestion that it might not be was expressly rejected by the majority in *Thomas v Department of State Highways,* 398 Mich 1, 13–14; 247 NW2d 530 (1976):

"Under the guise of 'judicial refinement', the KAV-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ANAGH/FITZGERALD opinion has sought to impose rather
novel standards for governmental immunity. For exam-
ple, the opinion suggests that if a police commission
plans a particular type of war on crime, that is a
governmental function, but if a police officer under that
plan performs the traditional police function of arrest-
ing a criminal, that is not a governmental function.
*This certainly does not in any way correspond to the
meaning the Legislature intended.*" (Emphasis added,
footnote omitted.)

Moreover we find the case before us to be distin-
guishable from *Kriger v South Oakland County
Mutual Aid Pact,* 399 Mich 835; 250 NW2d 67
(1977), relied upon in the dissenting opinion. In
*Kriger* the police officer assailants were not in-
volved in the governmental function of making an
arrest but were engaged in an unprovoked as-
sault.[1]

The judgment of the trial court is affirmed. No
costs, a public question.

A. C. MILLER, J., concurred.

D. C. RILEY, P. J. *(dissenting).* I respectfully dis-
sent.

In this matter, plaintiffs appeal an adverse ac-
celerated judgment, GCR 1963, 116.1, which dis-
missed their suit against defendant City of Utica

---

[1] In the Court of Appeals opinion in *Kriger v South Oakland
County Mutual Aid Pact,* 49 Mich App 7, 9; 211 NW2d 228 (1973) the
facts were stated to be as follows:

"On August 25, 1970, a disturbance took place at Memorial Park in
Royal Oak, Michigan. Police were ordered to the scene to restore
order. Plaintiff, a 17-year-old amateur photographer, had been observ-
ing the altercation from a vantage point across the street. Suddenly
and without provocation, three police officers assaulted and beat him,
causing severe and lasting injuries. *The assailants were not attempt-
ing to arrest plaintiff.* The incident was recorded by newspaper
photographers and TV cameramen and later published and broadcast.
The officers involved could not be identified." (Emphasis added.)

on grounds of governmental immunity. MCL 691.1407; MSA 3.996(107).

The complaint alleges that on February 22, 1976, defendant Poynter,[1] a sergeant in the Utica Police Department, while wearing his uniform, driving a marked police car and acting under color of authority, stopped a 1975 Vega driven by plaintiff Tung Gan Lee. According to the complaint, defendant Poynter then assaulted plaintiffs without justification, uttered racial epithets and engaged in other acts of brutality and harrassment against plaintiffs. In successive counts, the complaint also alleges false arrest; false imprisonment; malicious prosecution; violations of plaintiffs' civil rights under 42 USC 1983 and US Const, Am XIV; and "the tort of insult and outrage".

In *Thomas v Department of State Highways,* 398 Mich 1; 247 NW2d 530 (1976), the Supreme Court held:

"The key to determining the applicability of the immunity defense is in ascertaining whether or not the particular case is one 'wherein the * * * agency is engaged in the exercise or discharge of a governmental function'.

* * *

" 'Governmental function' is a term of art which has been used by the courts of this state to describe those activities of government which due to their public nature should not give rise to liability at common law. Through many years of application, the label of governmental function has been attached to a number of governmental activities.

* * *

"[T]he Legislature, in choosing the precise terminology of 'governmental function' to describe the limits of governmental immunity, intended that activities de-

---

[1] Defendant Poynter is not a party to this appeal.

scribed as governmental functions at common law at the time of enactment of the new legislation would enjoy *statutory* immunity from tort liability.

\* \* \*

"Under the present statutory scheme the judiciary, looking to past precedents (which in many cases are less than clear), must decide on a case-by-case basis which activities may be classified as governmental functions and thus entitled to immunity." *Id.* at 9, 10, 13. (Emphasis in original.)

Until recently, *Tzatzken v Detroit,* 226 Mich 603, 607–608; 198 NW 214 (1924), epitomized the common law rule in Michigan:

"While the courts have encountered difficulties in determining in particular instances whether or not certain officials, employees and agents of municipalities are in the discharge of governmental functions and therefore carry with them the immunity from liability by the municipality for their torts, as to policemen the courts have found little difficulty in putting them in the category of public officers *(Blynn v City of Pontiac,* 185 Mich. 35 [151 NW 681 (1915)]), and the discharge of their duties the discharge of governmental functions. They do not act for the municipality in its proprietary character but act for the State in its sovereign capacity. Although they may be personally liable for their unlawful acts, the municipality of which they are officers is not. The municipality in so far as it performs governmental functions acts in a sovereign capacity and carries with it, in the absence of statute to the contrary, the immunity of the sovereign."

See also, *Hirych v State Fair Commission,* 376 Mich 384; 136 NW2d 910 (1965), and *McPherson v Fitzpatrick,* 63 Mich App 461; 234 NW2d 566 (1975).

The continuing validity of the *Tzatzken* line of decisions has been called into question, however,

by a fresh, but terse,[2] decision of the Supreme
Court. See *Kriger v South Oakland County Mutual
Aid Pact,* 399 Mich 835; 250 NW2d 67 (1977).

In *Kriger,* the facts (as reported by the Court of
Appeals) were these:

"On August 25, 1970, a disturbance took. place at
Memorial Park in Royal Oak, Michigan. Police were
ordered to the scene to restore order. Plaintiff, a 17-
year-old amateur photographer, had been observing the
altercation from a vantage point across the street.
Suddenly and without provocation, three police officers
assaulted and beat him, causing severe and lasting
injuries. The assailants were not attempting to arrest
plaintiff. The incident was recorded by newspaper pho-
tographers and TV cameramen and later published and
broadcast. The officers involved could not be identified.

"Plaintiff sued the South Oakland County Mutual
Aid Pact, the 18 member cities of the Pact, and 3
unidentified police officers. His complaint sounded in
tort for assault and battery, libel and slander, and the
negligence of the Mutual Aid Pact and the 18 defendant
cities in training police officers. Plaintiff sought com-
pensatory damages and injunctive relief." 49 Mich App
7, 9; 211 NW2d 228 (1973).

The City of Berkley then requested and obtained
a summary judgment, GCR 1963, 117.2(1), dismiss-
ing it as a defendant on the basis of governmental

---

[2] I would offer an observation on the Supreme Court's frequently
recurring practice of issuing peremptory orders in lieu of granting
leave.

Given the ever-increasing number of litigants filing applications for
leave, it is understandable that the Court might be inclined to act
with dispatch in a case it believes has been wrongly decided and thus,
by issuing a peremptory order, to avoid the problem of justice delayed
being justice denied. But to act with speed can only be countenanced
in situations where the Supreme Court nonetheless satisfies its duty
of concise statement, Const 1963, art VI, § 6, and its "general obliga-
tion to explain and reconcile the law for bench, bar and populace".
*People v Clemons,* 74 Mich App 448, 461 n 1; 253 NW2d 795 (1977)
(D. C. RILEY, J., concurring). Otherwise, justice unexplained is surely
justice denied. *See, e.g., Pierce v Riley,* 81 Mich App 39; 264 NW2d
110 (1977).

immunity. The Court of Appeals, addressing various constitutional objections to the immunity statute, affirmed.

In lieu of granting leave to appeal, the Supreme Court in an order peremptorily reversed the summary judgment, observing:

"The complaint states a claim for which relief may be granted because it pleads facts which, if proved, demonstrate that the activity complained of is not activity 'in the exercise or discharge of a governmental function' under MCLA 691.1407; MSA 3.996(107), and, therefore, 'does not fall within the ambit of immunity established by the Legislature in 1970 PA 155.' *McCann v Michigan,* 398 Mich 65, 77 [247 NW2d 521] (1976)." 399 Mich at 835.

While I can fathom distinctions between the facts in *Kriger* and those in the case at bar, none compels or counsels a different result. If the governmental immunity statute affords no protection to a municipality for the intentional torts of police officers committed while quelling a disturbance, *Kriger, supra,* then the statute can offer no greater succor to the instant municipality for Sergeant Poynter's allegedly intentional torts stemming from a traffic stop.[3]

Accordingly, I would reverse the judgment below and remand the matter for trial.

---

[3] *Kriger v South Oakland County Mutual Aid Pact,* 399 Mich 835; 250 NW2d 67 (1977), rather than being an aberrant decision, stands as a clear departure from prior law. *See Mattox v City of Detroit,* 399 Mich 832; 250 NW2d 70 (1977), and *Oglesby v Walker,* 399 Mich 832; 250 NW2d 69 (1977), where the Supreme Court, in lieu of granting leave to appeal, reversed unpublished decisions of the Court of Appeals which had affirmed summary judgments dismissing the City of Detroit on grounds of governmental immunity. In *Mattox,* plaintiff claimed that a municipal police officer had intentionally and maliciously shot him without provocation. Likewise, in *Oglesby,* plaintiff, by her next friend, alleged that a city officer had arrested her and, prior to taking her to the police station, took her to an apartment where he forced her to engage in sodomy and fellatio.