# Order

**Michigan Supreme Court**
**Lansing, Michigan**

December 29, 2010

Marilyn Kelly,
Chief Justice

Michael F. Cavanagh
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway
Alton Thomas Davis,
Justices

139345-7(118)


CHRISTOPHER LEE DUNCAN, BILLY JOE
BURR, JR., STEVEN CONNOR, ANTONIO
TAYLOR, JOSE DAVILA, JENNIFER
O'SULLIVAN, CHRISTOPHER MANIES, and
BRIAN SECREST,
    Plaintiffs-Appellees,

v

               SC: 139345
               COA: 278652
               Ingham CC: 07-000242-CZ

STATE OF MICHIGAN and GOVERNOR OF
MICHIGAN,
    Defendants-Appellants.
_____/

CHRISTOPHER LEE DUNCAN, BILLY JOE
BURR, JR., STEVEN CONNOR, ANTONIO
TAYLOR, JOSE DAVILA, JENNIFER
O'SULLIVAN, CHRISTOPHER MANIES, and
BRIAN SECREST,
    Plaintiffs-Appellees,

v

               SC: 139346
               COA: 278858
               Ingham CC: 07-000242-CZ

STATE OF MICHIGAN and GOVERNOR OF
MICHIGAN,
    Defendants-Appellants.
_____/

CHRISTOPHER LEE DUNCAN, BILLY JOE
BURR, JR., STEVEN CONNOR, ANTONIO
TAYLOR, JOSE DAVILA, JENNIFER
O'SULLIVAN, CHRISTOPHER MANIES, and
BRIAN SECREST,
    Plaintiffs-Appellees,

v

               SC: 139347
               COA: 278860
               Ingham CC: 07-000242-CZ

STATE OF MICHIGAN and GOVERNOR OF

MICHIGAN,
　　　　　　Defendants-Appellants.
_____/

On order of the Court, the motion for reconsideration of this Court's November 30, 2010 order is considered, and it is DENIED, because it does not appear that the order was entered erroneously.

CORRIGAN, J. (*dissenting*).

I dissent from the order denying defendants' motion for reconsideration of this Court's November 30, 2010 order. The majority acts today with troubling yet purposeful haste in denying defendants' motion for reconsideration before the end of the calendar year with the clear intent to prevent the newly constituted Court after January 1, 2011, from considering defendants' motion. Indeed, I anticipated the problematic expediency in which the majority would treat such a motion in my objection to the release of the November 30, 2010 order without my dissent. In particular, I stated that "[t]he Court's decision to suddenly expedite this case seems designed to prevent the new Court after January 1, 2011 from considering a motion for reconsideration." *Duncan v State of Michigan*, ___ Mich ___ (2010).[1] Perhaps most troubling is that the denial of defendants' motion for reconsideration comes after defendants were forced to file their motion without the opportunity to consider my dissenting statement to the November 30 order.[2] My dissenting statement was not issued until December 22, 2010, which was one

---

[1] My objection included with the November 30, 2010 order stated:

> I object to the release of the Court's order without my dissenting statement and I reserve the right to file one as soon as I can. The majority has decided to grant the motion for reconsideration, and to reverse our previous order, without affording disagreeing Justices sufficient time to adequately respond to this decision. Instead, the majority has now decided to expedite the release of its order regardless of the fact that I have worked in a timely fashion to prepare a dissenting statement, but have not yet completed such a statement. This is contrary to our practice during the 11 years I have served on this Court. The Court's decision to suddenly expedite this case seems designed to prevent the new Court after January 1, 2011 from considering a motion for reconsideration.

[2] As I set forth in my dissenting statement issued on December 22, 2010, the prior procedural history of this case is as follows:

> In this case, indigent criminal defendants in three Michigan counties brought claims alleging that they, as well as future indigent defendants, were being denied their constitutional rights to counsel and the effective

day after defendants were forced into filing their motion for reconsideration on December 21, 2010, in order to satisfy the 21 day deadline for motions for reconsideration. See MCR 7.313(E). Thus, defendants had to file their motion without having the opportunity to review and assess my dissenting statement. This wrongly deprived them of an opportunity to consider the thinking of the full Court in violation of our state constitution.

Specifically, our state constitution provides:

> Decisions of the supreme court, including all decisions on prerogative writs, shall be in writing and shall contain a concise statement of the facts and reasons for each decision and reasons for each denial of leave to appeal. *When a judge dissents in whole or in part he shall give in writing the reasons for his dissent.* [Const 1963, art VI, § 6 (emphasis added).][3]

---

assistance of counsel. After the trial court denied defendants' motion for summary disposition and granted class certification, defendants sought leave to appeal in the Court of Appeals. The Court of Appeals granted leave, and on June 11, 2009, it affirmed the trial court's denial of defendants' motion for summary disposition and the grant of class certification in a 2-1 decision. We subsequently granted leave. After hearing oral arguments in April 2010, we issued an order on April 30, 2010, vacating the trial court's grant of class certification and remanding for consideration of class certification in light of *Henry v Dow Chemical Co*, 484 Mich 483 (2009). In regard to defendants' motion for summary disposition, we affirmed only the result of the Court of Appeals majority for different reasons based on the rationale that it was premature to make a decision on the substantive issues based solely on plaintiffs' pleadings. *Id*. Defendants then filed a motion for reconsideration, which we granted by a vote of 4-3 on July 16, 2010. On August 6, 2010, plaintiffs filed a motion for reconsideration of the July 16, 2010 order, which the majority now grants. Despite my objection, the majority issued the order granting plaintiffs' motion for reconsideration on November 30, 2010, without my dissent in an act virtually unprecedented in the 11 years I have served on this Court. [*Duncan*, ___ Mich ___ (2010) (CORRIGAN, J. dissenting) (Footnotes and citations omitted).]

[3] This longstanding requirement has been in place since the adoption of the Constitution of Michigan from 1850. See Const 1850, art VI, § 10 ("The decisions of the supreme court shall be in writing, and signed by the judges concurring therein. Any judge dissenting therefrom shall give the reasons of such dissent in writing under his signature").

The majority contravenes this constitutional mandate by deciding a motion filed prior to the issuance of my constitutionally required reasons for dissenting. In my view, that my dissent has since been issued does not satisfy this provision because defendants had to file their motion prior to the issuance of my dissent in order to be timely under MCR 7.313(E). Thus, the majority has diminished the protection of this constitutional provision by implementing a timeline that required defendants to file any motion for reconsideration without the benefit of my dissent. Further, "to act with speed can only be countenanced in situations where [this Court] nonetheless satisfies its duty [under Const 1963, art VI, § 6]." *Tung Gan Lee v City of Utica*, 83 Mich App 679, 684 n 2 (1978) (RILEY, P.J., dissenting) (discussing this Court's use of peremptory orders). The majority's haste has thus undermined our duty under our state constitution.

I believe that counsel for a losing party cannot properly decide whether to file a motion for reconsideration or what to include in such a motion without knowing where the entire Court stands on an issue. This necessarily includes having an opportunity to evaluate each Justice's position. Moreover, such an evaluation can only be made after each Justice has fully enunciated his or her position. Here, the majority's calculated handling of this case deprived the litigants of the reasoning of the full Court.

The majority's lack of restraint is especially troubling given that the electorate already decided on a newly composed Court in the November 2, 2010 election. Undaunted, the majority, now paced by the calendar alone, is content in its attempt to foreclose reconsideration. I believe that the majority's handling of this case belies the way an appellate court should function. Appellate courts should be marked by steadiness and consistency, not gamesmanship in a race against the clock.

Further, I believe that defendants could properly move to file a supplement to their current motion or again move for reconsideration despite the language of MCR 7.313(F). Specifically, MCR 7.313(F) provides that "[t]he clerk shall refuse to accept for filing any motion for reconsideration of an order denying a motion for reconsideration." It is axiomatic that our court rules cannot contravene our state constitution. Thus, the procedural bar in MCR 7.313(F) cannot properly be applied here, where defendants were forced to file their motion for reconsideration without the full thinking of the Court contrary to our state constitution, Const 1963, art VI, § 6.

The denial of defendants' motion also wrongly leaves intact the erroneous November 30, 2010 order, which reinstated the April 30, 2010 order, where we erroneously affirmed the result of the Court of Appeals and remanded this case without a governing standard for evaluation of the claims. I continue to believe that the July 16, 2010 order granting defendants' motion for reconsideration of the April 30, 2010 order was properly entered. First, summary disposition is warranted because plaintiffs' claims

are not justiciable.[4]  In addition, the April 30, 2010 order failed to set forth a governing standard.  The majority permits this case to continue without providing any guidance to

---

[4] In a statement that Justice YOUNG and I joined, Justice MARKMAN previously set forth that the April 30, 2010 order was erroneous for the reason that "it is not premature to decide this case because the precise issue presented is whether plaintiffs have stated a claim on which relief can be granted, and this, as well as the threshold justiciability issues, can be determined on the face of the complaint."  *Duncan,* 486 Mich at 1071 (MARKMAN, J., concurring).  He also set forth that summary disposition is warranted for the following reasons articulated in the Court of Appeals dissent:

(1) The U.S. Supreme Court in *Gideon v Wainwright*, 372 US 335 (1963), and *Strickland v Washington*, 466 US 668 (1984), "was concerned with results, not process.  It did not presume to tell the states *how* to assure that indigent criminal defendants receive effective assistance of counsel." 284 Mich App 246, 357 (2009).

(2) Plaintiffs' claims would have "the judiciary override the Michigan system of local control and funding of legal services for indigent criminal defendants," despite the absence here of any constitutional violation. *Id*. at 358.

(3) Plaintiffs' claims are not sufficient to create a presumption of either prejudice, or prejudice per se, that would warrant either declaratory or injunctive relief. *Id*. at 361.

(4) Plaintiffs lack standing, and, therefore, their claims are not justiciable. *Id*. at 371.

(5) Plaintiffs' claims are not ripe for adjudication, and, therefore, their claims are not justiciable. *Id*. at 371, 376.

(6) Plaintiffs' claims are not justiciable and, therefore, the relief they seek should not be granted. *Id*. at 385.

(7) In finding a justiciable controversy, the Court of Appeals erred in adopting a number of assumptions that are conjectural and hypothetical, including assumptions that plaintiffs and the class they purport to represent will be convicted of the crimes with which they are charged, that such convictions will result from prejudice stemming from ineffective assistance of counsel, that such ineffective assistance will be attributable to the inaction of defendants, and that trial and appellate judges will be unable or

the trial court and the litigants concerning the legal standards that will govern discovery, subsequent motions, as well as the class certification question.[5] Moreover, the majority is

unwilling to afford relief for such violations of the Sixth Amendment. *Id.* at 368-370.

(8) There is no constitutional precedent that "guarantees an indigent defendant a particular attorney" or an "attorney of a particular level of skill" [as long as the attorney is not "so deficient as to cause prejudice"]; that requires a "predetermined amount of outside resources be available to an attorney"; or that requires that there be a "meaningful relationship with counsel." *Id.* at 370[, 384].

(9) The Court of Appeals assertions that affording plaintiffs injunctive relief "could potentially entail a cessation of criminal prosecutions against indigent defendants," *id.* at 273, and "that nothing in this opinion should be read as foreclosing entry of an order granting the type of relief so vigorously challenged by defendants," *id.* at 281, accurately describe the potential consequences of its opinion, which consequences would constitute an altogether unwarranted, improper, and excessive response to plaintiffs' claims. *Id.* at 380-385.

(10) The Court of Appeals has "issued an open invitation to the trial court to assume ongoing operational control over the systems for providing defense counsel to indigent criminal defendants in Berrien, Genesee and Muskegon counties." And with that invitation comes a "blank check" on the part of the judiciary to "force sufficient state level legislative appropriations and executive branch acquiescence" in assuming similar control over the systems in every county in this state, while "nullifying the provisions" of the criminal defense act and "superseding the authority of the Supreme Court and the State Court Administrator." *Id.* at 383-384. [*Duncan,* 486 Mich at 1072 (MARKMAN, J., concurring).]

[5] As I stated in my dissenting statement to the November 30, 2010 order:

I write to emphasize that the majority's decision to reinstate the initial order does not rectify our failure to articulate any governing standards in the initial order. Rather, the majority revives this palpable error, placing the trial court in the same quandary of operating without any governing standards in deciding plaintiffs' claims.

The initial order contained an internal inconsistency because it vacated the Court of Appeals opinion without offering any alternative

analysis. All future actions in this case depend on an articulation of the standard for pre-conviction Sixth Amendment claims, which the initial order did not provide. Specifically, the governing standard for what constitutes effective assistance of counsel in this context is necessary for this case to properly proceed. In fact, the trial court conceded the lack of clarity in regard to whether the *Strickland v Washington*, 466 US 668 (1984), standard applies to plaintiffs' pre-conviction claims of inadequate representation. Transcript of Motions for Summary Disposition and Class Certification, May 15, 2007, p 34. Further, the order the majority now reinstates has recently been cited as illustrating the "state of confusion created by the lack of a clear standard to which courts can look when adjudicating these types of systemic reform cases." Chiang, *Indigent Defense Invigorated: A Uniform Standard for Adjudicating Pre-conviction Sixth Amendment Claims*, 19 Temp Pol & Civ Rts L R 443, 461 (2010). Additionally, similar class action cases have generated conflicting opinions on the appropriate constitutional standards. See *Hurrell-Harring v State of New York*, 15 NY3d 8 (2010) (reversing the holding of the Appellate Division that the claims of a class of indigent defendants were not justiciable and reinstating the plaintiffs' complaint because it "contained[ed] numerous plain allegations that in specific cases counsel simply was not provided at critical stages of the proceedings."); *Platt v Indiana*, 664 NE2d 357, 363 (Ind App, 1996) (affirming the dismissal of the claims of a class of indigent defendants challenging a county indigent defense system, concluding that the claims were not reviewable because "a violation of a Sixth Amendment right will arise only after a defendant has shown he was prejudiced by an unfair trial."); *Kennedy v Carlson*, 544 NW2d 1, 8 (Minn, 1996) (reversing the decision of the district court granting the plaintiff public defender summary disposition, concluding that the plaintiff had failed to show an injury-in-fact because his claims of constitutional violations were "too speculative and hypothetical" where there was no evidence of inadequate assistance in any particular case or that the plaintiff "faced professional liability as a result of his office's substandard services."); *Luckey v Harris*, 896 F2d 479, 480 (CA 11, 1989) (Edmonson, J., dissenting) (criticizing the panel's holding that "deficiencies that do not meet the 'ineffectiveness' standard may nonetheless violate a defendant's rights under the sixth amendment" as "inconsistent with the language and rationale of both *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052, 2064; 80 L Ed 2d 674 (1984), and *United States v Cronic*, 466 US 648, 659; 104 S Ct 2039, 2047; 80 L Ed 2d 657 (1984).").

Yet the majority permits this case to continue without providing any guidance to the trial court and the litigants concerning the legal standards

content to deny defendants' alternative motion requesting that we clarify the legal standard that governs this case, despite that the continuation of this entire case hinges on the articulation of such a standard. The majority continues to brush this problem aside. I would grant defendants' motion for reconsideration of the November 30, 2010 order.

MARKMAN, J. (*dissenting*).

I dissent from the order denying defendants' motion for reconsideration, and defendants' motion to deem the December 22, 2010 order as the Court's final order. For the reasons stated in my statements of July 16, 2010 and November 30, 2010, I would grant defendants' motion for reconsideration, vacate this Court's order granting plaintiffs' motion for reconsideration, and reinstate this Court's July 16, 2010 order.

The procedural history of this case is unusual and raises legal issues of first impression. One such issue is whether, as Justice CORRIGAN argues, parties have a constitutional right to have dissents considered before having to file a motion for reconsideration. See Const 1963, art 6, § 6 ("When a judge dissents in whole or in part he shall give in writing the reasons for his dissent."). Here, given that Justice CORRIGAN's dissent was not issued until December 22, 2010 (with the issuance of her statement having been expressly contemplated by what this Court issued on November 30, 2010), defendants were never afforded such an opportunity.

Put another way, is a party entitled to assess whether to file a motion for reconsideration, and how most effectively to fashion his or her arguments in support of such a motion, only after having been fully apprised of where the entire "court" stands on the underlying issue, as opposed only to where some individual justices stand? Related to this, before a motion for reconsideration must be filed, is a party entitled to have the arguments of dissenting justices considered by the majority, so that the majority may possibly be persuaded by such arguments? Thus, the decisive issue of first impression— were defendants here required to file their motion for reconsideration within 21 days of November 30, 2010, or within 21 days of December 22, 2010?

---

that will govern discovery or subsequent motions. In particular, the class certification question is inextricably intertwined with the issue of what is the proper standard for evaluating systemic pre-conviction claims of ineffective assistance of counsel. Determining how many have or will suffer actual injury hinges entirely on what constitutes this type of injury; what type of proofs are necessary to show harm; and whether the putative plaintiffs are adequate class representatives. Thus, without a standard to form the basis for the class action analysis under *Henry*, it appears the trial court cannot properly make any determination under *Henry*. [*Duncan*, ___ Mich ___ (2010) (CORRIGAN, J. dissenting) (Footnotes omitted).]

These questions must be considered both in the context of the constitution, as Justice CORRIGAN asserts, and in the context of the court rules themselves. See MCR 7.313(E). In addition, assuming that either of these sources of the law afford a party the right to consider dissenting statements before being required to file a motion for reconsideration, what is the proper remedy where this right has not been afforded?

Unlike Justice CORRIGAN (who provides analysis for her position), and the majority (which provides no analysis for its contrary position), I have not yet reached a conclusion concerning what is required by the constitution or the court rules in these regards. I do, however, share Justice CORRIGAN's concerns about the propriety of the procedures followed by the majority in its determination to resolve these issues by December 31, 2010. See also, *MEA v Sec'y of State*, ___Mich ___, Section VI (2010) (Docket No. 137451)(MARKMAN, J., dissenting). Therefore, because I believe that defendants' motion, which we just received on December 28, 2010, raises legal issues of first impression, and because there are no emergency circumstances present here that require us to decide these issues within 48 hours of the motion, I would direct the parties to brief these issues and direct the Clerk to schedule oral argument at the earliest opportunity.

Concerning the majority's assertion that "no motion for reconsideration of this order will be entertained," we remind the majority that, while it may bind this Court by its substantive decisions, it does not bind by its pronouncements as to controversies that have not yet been presented to the Court, i.e., motions for reconsideration that have not yet been filed. That is not how this Court's "judicial power" is exercised.

Finally, with regard to the underlying motion for reconsideration in this case, I reaffirm my concern in allowing plaintiffs' class action to proceed. In particular, I reaffirm my concern that plaintiffs' claims: (a) threaten to have the judiciary override, and assume ongoing control, of Michigan's system of local control and funding of legal services for indigent defendants, despite the absence here of any constitutional violation; (b) threaten, in the words of the Court of Appeals, "a cessation of criminal prosecutions against indigent defendants," *Duncan v Michigan*, 284 Mich App 246, 273, 281 (2009); and (c) extend an open invitation to Michigan trial courts to assume ongoing operational control over the systems for providing defense counsel to indigent defendants in Berrien, Genesee and Muskegon counties, and with that an invitation to compel state legislative appropriations, and executive branch acquiescence in such appropriations, in assuming similar judicial control over the criminal justice systems in every county of this state, while nullifying provisions of the criminal defense act and superseding the authority of the Supreme Court and the State Court Administrator.

YOUNG, J., joins the statement of MARKMAN, J.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

December 29, 2010

_____
Clerk